LOCAL UNION NO. 4–14, OIL, CHEMICAL & ATOMIC WORKERS INTERNATIONAL UNION, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 82–4294.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1983.

Laurence Gold, Washington, D.C., John R. Tadlock, Denver, Colo., Marsha S. Berzon, San Francisco, Cal., for petitioner.

Pope, Ballard, Shepard & Fowle, Edward B. Miller, Chicago, Ill., for amicus curiae U.S. Chamber of Commerce.

Elliott Moore, Deputy Associate Gen. Counsel, Allison W. Brown, Jr., N.L.R.B., Washington, D.C., for respondent.

James A. Strain, George J. Zazas, Indianapolis, Ind., for Amoco Production Co.

Before BROWN, THORNBERRY and TATE Circuit Judges.

TATE, Circuit Judge:

The Oil Chemical and Atomic Workers Union (OCAW), Local 4–14, appeals the National Labor Relations Board's dismissal of unfair labor practice charges against Amoco Production Company (Amoco).[1] The Board ruled that Amoco did not commit an unfair labor practice in treating as void its collective bargaining agreement with the National Oil Workers Union (NOWU), Local 14, when the union attempted to change affiliation to OCAW, reasoning that the affiliation election was improper because nonunion members were not allowed to participate. We affirm the Board's order, finding to be within the Board's wide discretion the affiliation-election procedures adopted herein to ensure the fair and free choice of the bargaining representatives of all employees.

## I.

In 1965, Amoco entered a collective bargaining agreement with the NOWU Local 14. When the national board of directors of NOWU voted in 1972 to dissolve, NOWU Local 14 continued to operate as an independent, unaffiliated union until June of 1974, when the Houston division members of NOWU Local 14 voted in favor of affiliation with OCAW. In September of 1974, Amoco informed OCAW that it was going to treat as void the collective bargaining agreement it had entered into with NOWU Local 14.

In October and November of 1974 OCAW Local 4–14, filed unfair labor practice charges against Amoco. On September 29, 1975, the Board sustained the unfair labor practice charges and ordered Amoco to bargain with OCAW and "embody in a signed agreement any understanding reached." Amoco Production Company, 220 N.L.R.B. 861, 865 (1975). In a supplemental decision, the Board ordered Amoco to pay OCAW $45,750 plus interest in back dues wrongfully withheld by Amoco during the period between the disputed affiliation election and the new collective bargaining agreement entered between OCAW and Amoco pursuant to the Board's September 29, 1975, order. 233 N.L.R.B. 158 (1977).

The full Board decided to reconsider the September 29, 1975, order on the suggestion that the holding on the validity of the affiliation election was inconsistent with Jasper Seating Co., 231 N.L.R.B. 1025 (1977). Upon reconsideration the Board held that affiliation elections were internal union matters which must be given effect as long as "due process" is afforded. Amoco Production Co., 239 N.L.R.B. 182 (1979). Finding that excluding nonunion members from voting in affiliation elections did not violate due process, the Board once again upheld the election, overruling any implication in *Jasper Seating* to the contrary.

Amoco appealed that ruling to this court, contesting inter alia the Board's conclusion that the affiliation election was valid. Finding insufficient evidence in the Board's September 29, 1975, order to support the finding on a subsidiary issue, *i.e.,* whether

---

1. After the appeal was perfected, a motion was granted permitting substitution of a successor local, Local Union 4–100, Oil Chemical and Atomic Workers International Union, AFL–CIO.

OCAW Local 4–14 was the successor of NOWU Local 14, this court remanded to the Board for an articulation of the basis for its finding on the issue. *Amoco Production Co. v. National Labor Relations Board,* 613 F.2d 107, 112 (5th Cir.1980).

On remand, the Board pretermitted discussion of the successorship issue by reconsidering its earlier ruling on what it considered the "threshold" issue with regard to the validity of the affiliation election. It now held that the affiliation election was invalid because nonunion members were not allowed to participate. 262 N.L.R.B. No. 160 (1982). The Board reasoned that prohibiting nonunion members from participating in the election offended the due process requirements that must be observed in conducting affiliation elections. *See* Bear Archery, Division of Victor Comptometer Corp., 223 N.L.R.B. 1169 (1976).

## II.

■ "Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to ensure the fair and free choice of bargaining representatives by employees." *National Labor Relations Board v. A.J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946). In judicial review of the Board's exercise of its "wide discretion in the conduct and supervision of representation elections . . . , 'the only question presented to the Courts in an election review is whether the Board has reasonably exercised its discretion.'" *National Labor Relations Board v. Osborn Transp., Inc.,* 589 F.2d 1275, 1279 (5th Cir.1979).

■ The courts must show deference to the special expertise of the Board in its administrative rulings. *Texaco, Inc. v. National Labor Relations Board,* 700 F.2d 1039, 1042–43 (5th Cir.1983). Moreover, the Board is authorized to change its application of the Act "in light of its cumulative experience," *Beth Israel Hospital v. National Labor Relations Board,* 437 U.S. 483, 508, 98 S.Ct. 2463, 2477, 57 L.Ed.2d 370 (1978), providing the Board justifies its position within the statutory framework, *id.,* 437 U.S. at 501, 98 S.Ct. at 2473. *See also Texaco, Inc. v. National Labor Relations Board, supra,* 700 F.2d at 1043.

As stated in *Beth Israel Hospital v. National Labor Relations Board, supra,* 437 U.S. at 501, 98 S.Ct. at 2473–74: "The judicial role is narrow: The rule which the Board adopts is judicially reviewable for consistency with the Act, and for rationality, but if it satisfies those criteria, the Board's application of the rule, if supported by substantial evidence on the record as a whole, must be enforced."

In the present proceedings, the Board has determined that due process fairness requires that not only union, but also non-union, members are entitled to vote on an affiliation election that will change the affiliation of the bargaining representative for all the employees.[2] Although the Board earlier vacilated somewhat in establishing a rule with regard to nonmember participation in affiliation elections, the Board clearly articulated reasonable grounds for this later change.

■ Strong arguments to the contrary are stated by petitioner local, and indeed they were adopted by the Board in its earlier rulings that were overruled in the present proceedings. Nevertheless, we are unable to say that the general ruling that now requires the participation of nonunion

---

**2.** The crux of the Board's reasoning is stated at 262 N.L.R.B. No. 160 (1982), p. 5 of its slip opinion:

    If the Board is to accept privately conducted elections as a basis for amending Board certifications, it should be certain that minimal standards of due process be observed lest the very validity of Board certifications and elections be undermined. Granted that employees in a bargaining unit cannot be compelled to vote, they can, at the very least,

be afforded *the opportunity to vote.* It appears basic to the collective-bargaining process that the selection of a bargaining representative be made by the employees in the bargaining unit. In our view, therefore, a cardinal prerequisite to any change in designation of the bargaining representative is *that all employees* in the bargaining unit be afforded the opportunity to participate in such selection.

members in an affiliation election is irrational or inconsistent with the Act, or that it is beyond the wide discretion of the Board to establish procedures in an affiliation election that will ensure the fair and free choice of the bargaining representative of all the employees.

*Conclusion*

Accordingly, we AFFIRM the Board's order.

AFFIRMED.